**SUBMITTED WITHOUT REQUEST FOR ORAL ARGUMENT**

**Case No. No. 10-5333**

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**NICHOLAS J. DUBOIS,**

Appellant,

**v.**

**WASHINGTON MUTUAL BANK, IN RECEIVERSHIP; FEDERAL NATIONAL MORTGAGE ASSOCIATION; JPMORGAN CHASE BANK, N.A.; CHASE HOME FINANCE, LLC; AND TAIT O. NORTON,**

Appellees.

Appeal from the District Court of the District of Columbia
No. 1:09-CV-02176(RJL)
Judge Richard J. Leon

**JOINT BRIEF OF APPELLEES**

Russell J. Pope
(Bar No. 426865)
TREANOR POPE & HUGHES PA
29 W. Susquehanna Avenue
Suite 110
Towson, MD 21204
Telephone: (410) 494-7777
Facsimile: (410) 494-1658
rjpope@tph-law.com

*Counsel for Appellee Federal National Mortgage Association*

March 28, 2012

David S. Panzer
(Bar No. 470677)
David M. DeVito
(Bar No. 998382; admission pending)
GREENBERG TRAURIG, LLP
2101 L Street, N.W.
Suite 1000
Washington, D.C. 20037
Telephone: (202) 331-3100
Facsimile: (202) 261-0150
panzerd@gtlaw.com

*Counsel for Appellees JPMorgan Chase Bank, N.A., Chase Home Finance LLC, and Tait O. Norton*

IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| NICHOLAS J. DUBOIS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 10-5333 |
| | ) | |
| WASHINGTON MUTUAL BANK, | ) | |
| (IN RECEIVERSHIP), *et al.* | ) | |
| | ) | |
| | ) | |
| Appellees. | ) | |

## APPELLEES' CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Rule 28 of the Circuit Rules of this Court, Respondents JPMorgan Chase Bank, N.A., Chase Home Finance LLC, Federal National Mortgage Association, and Tait O. Norton (collectively, the "Appellees"), through the undersigned counsel of record, file this Certificate as to Parties, Rulings, and Related Cases.

A.    Parties and Amici

The parties before the District Court were plaintiff Nicholas DuBois ("DuBois"), and defendants Washington Mutual Bank ("Washington Mutual"), J.P. Morgan Chase Bank, N.A. ("JPMC"), Chase Home Finance LLC ("Chase Home Finance"), Federal National Mortgage Association ("Fannie Mae"), Federal

i

Deposit Insurance Corporation ("FDIC"), Federal Housing Finance Agency

("FHFA"), Finestein & Malloy, LLC ("F&M"), and Tait O. Norton ("Norton").

Pursuant to a Purchase and Assumption Agreement dated September 25, 2008,

JPMC acquired certain assets and assumed certain liabilities of Washington Mutual

Bank from the Federal Deposit Insurance Corporation acting as receiver.  On May

1, 2011, Chase Home Finance was merged into JPMC.  FHFA was dismissed by

stipulation filed in the District Court.  Following appellate mediation, FDIC and

F&M agreed to a settlement that will result in the dismissal of all claims against

them with prejudice.  Thus, the defendants that remain Parties to the appeal

pending before this Court are JPMC (a) as acquirer of certain assets and liabilities

of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as

Receiver for Washington Mutual Bank, (b) for itself and (c) as successor by

merger to Chase Home Finance, Norton, and Fannie Mae.  No intervenors or amici

appeared before the District Court, and none appear before this Court.

     B.    <u>Ruling Under Review</u>

The decision under review is the Memorandum Opinion of the Honorable

Richard J. Leon, United States District Judge for the District of Columbia, filed

September 2, 2010, granting the Defendants/Appellees' Motions to Dismiss and

dismissing the civil action with prejudice.  The Memorandum Opinion is an

unpublished decision available at *DuBois v. Washington Mutual Bank, et al.*, No.

09-2176 (RJL), 2010 WL 3463368 (D.D.C. Sept. 3, 2010).

    C.    <u>Related Cases</u>

This case is related to a foreclosure action entitled *Federal National Mortgage Association v. Nicholas J. DuBois, et al.*, Case No. 03-CV-642 (JLL), previously pending in the United States District Court for the District of New Jersey (the "New Jersey Foreclosure Action"). The New Jersey Foreclosure Action ended with a Stipulation of Settlement and Order entered by the New Jersey District Court on August 9, 2004. This case relates to the New Jersey Foreclosure Action because it raises claims involving the loan that gave rise to the foreclosure, including allegations that Washington Mutual breached the settlement agreement that resolved the New Jersey Foreclosure Action.

DATED:    March 28, 2012        Respectfully submitted,


/s/ David S. Panzer
David S. Panzer (Bar No. 470677)
David M. DeVito (Bar No. 998382;
admission pending)
Greenberg Traurig, LLP
2101 L Street, NW, Suite 1000
Washington, DC  20037
Tel. (202) 331-3100
Fax. (202) 331-3101
panzerd@gtlaw.com

*Counsel for JPMorgan Chase Bank, N.A.,*
*Chase Home Finance LLC, and Tait O.*
*Norton*


/s/ Russell J. Pope
Russell J. Pope (Bar No. 426865)
TREANOR POPE & HUGHES PA
29 W. Susquehanna Ave., Suite 110
Towson, MD 21204
Tel. (410) 494-7777
Fax. (410) 494-1658
rjpope@tph-law.com

*Counsel for Appellee Federal National*
*Mortgage Association*

## TABLE OF CONTENTS

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES** ........i

**TABLE OF CONTENTS** ..................................................................v

**TABLE OF AUTHORITIES** .......................................................... vii

**JURISDICTIONAL STATEMENT** ....................................................1

**STATEMENT OF THE ISSUES** .........................................................2

**STATEMENT OF THE CASE** ............................................................3

**SUMMARY OF ARGUMENT** ...........................................................7

**ARGUMENT** ....................................................................................11

**I.     THE DISTRICT COURT PROPERLY DISMISSED DUBOIS' STATE COMMON LAW, STATE STATUTORY LAW, FCRA AND RESPA CLAIMS AGAINST CHASE HOME FINANCE, NORTON, AND FANNIE MAE AS TIME-BARRED.** ........................................11

    **A.     Standard of Review.** ..................................................11

    **B.     The District Court Correctly Determined that the Three-Year Statute of Limitations Supplied by District of Columbia Law Applies to DuBois' State Law Claims.** ...........................12

    **C.     The District Court Correctly Found that DuBois' Claims Accrued No Later Than January 2006 and, Therefore, Were Barred by the Statute of Limitations.** .....................................16

    **D.     The District Court Properly Held that the Applicable Statutes of Limitations Barred DuBois' FCRA and RESPA Claims.** ...................................................................21

**II.    THE DISTRICT COURT PROPERLY DISMISSED DUBOIS' FDCPA CLAIMS BECAUSE CHASE HOME FINANCE DOES NOT QUALIFY AS A DEBT COLLECTOR WITHIN THE MEANING OF 15 U.S.C. § 1692a(6)(F)(III).** .......................................................22

**III.    THE DISTRICT COURT PROPERLY HELD THAT THE P&A AGREEMENT BARRED ALL OF DUBOIS' CLAIMS AGAINST JPMC.** ...........................................................................................23

**IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXERCISING SUPPLEMENTAL JURISDICTION AND RULING ON THE MERITS OF DUBOIS' STATE LAW CLAIMS.** ...........................27

**V.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING LEAVE TO AMEND WHERE DUBOIS FAILED TO SUBMIT ANY PROPOSED AMENDMENT AND ANY SUCH AMENDMENT WOULD BE FUTILE.** .......................................................30

        **A.    Because DuBois is a Licensed Attorney He Is Not Entitled to Any Leniency in Complying With the Federal Rules of Civil Procedure.** .................................................................................30

        **B.    Dismissal With Prejudice Was Proper Because Granting Leave to Amend Would Have Been Futile.** ...........................32

**CONCLUSION** ...........................................................................................33

**CERTIFICATE OF COMPLIANCE WITH RULE 32(A)** ...........................35

**CERTIFICATE OF SERVICE** ...........................................................................36

# TABLE OF AUTHORITIES

<u>Cases</u>

*Ackermann v. United States*,
340 U.S. 193 (1950)..................................................................................15

*Adem v. Bush*,
425 F. Supp. 2d 7 (D.D.C. 2006)..............................................................25

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*,
62 F.3d 1454 (D.C. Cir. 1995)...................................................................13

*Atchinson v. Dist. of Columbia*,
73 F.3d 418 (D.C. Cir. 1996) ....................................................................32

*Atherton v. D.C. Office of Mayor*,
567 F.3d 672 (D.C. Cir. 2009) ....................................................................2

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937 (2009)....................................................2, 19

*Bailey v. Nat'l Servicing Corp.*,
154 F.3d 384 (7th Cir. 1998) ....................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................2, 19

*Bond v. Serrano*,
566 A.2d 47 (D.C. 1989) ..........................................................................20

*Borough of W. Mifflin v. Lancaster*,
45 F.3d 780 (3d Cir. 1995)........................................................................29

*Cassese v. Wash. Mut., Inc.*,
No. 05-cv-2724(ADS)(ARL), 2008 WL 7022845 (E.D.N.Y. Dec. 22, 2008)........27

*C & E Servs., Inc. v. Ashland, Inc.*,
498 F. Supp. 2d 242 (D.D.C. 2007).........................................................13

*Colbert v. Georgetown Univ.*,
641 A.2d 469 (D.C. 1994) ....................................................................17

*Clouser v. Temporaries, Inc.*,
730 F. Supp. 1127 (D.D.C. 1989)........................................................13

*Curtis v. Aluminum Ass'n*,
607 A.2d 509 (D.C. 1992) ...................................................................20

*Diven v. Amalgamated Transit Union & Local 689*,
38 F.3d 598 (D.C. Cir. 1994)...............................................................28

*East v. Graphic Arts Indus. Joint Pension Trust*,
718 A.2d 153 (D.C. 1998) ...................................................................20

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
48 F.3d 1260 (D.C. Cir. 1995).............................................................28

*Ellis v. Barto*,
918 P.2d 540 (Wash. Ct. App. 1996).....................................................15

*Erie R.R. Co. v. Tompkins*,
304 U.S. 64 (1938)...............................................................................13

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996).............................................................32

*Foman v. Davis*,
371 U.S. 178 (1962).............................................................................32

*Forte v. Goldstein*,
461 A.2d 469 (D.C. 1983) ...................................................................14

*Griggs v. Wash. Area Metro. Transit Auth.*,
232 F.3d 917 (D.C. Cir. 2000).............................................................14

*Habib v. Raytheon Co.*,
616 F.2d 1204 (D.C. Cir. 1980)...........................................................14

*Haines v. Kerner*,
404 U.S. 519 (1972)..................................................................31

*Hancock v. Homeq Servicing Corp.*,
No. 05-0307, 2007 WL 1238746 (D.D.C. Apr. 27, 2007).......................................14

*Harris v. Sec'y, U.S. Dep't of Vet. Affairs*,
126 F.3d 339 (D.C. Cir. 1997) ...............................................................29

*Huang v. D'Albora*,
644 A.2d 1 (1994) .......................................................................13, 20

*In re Pena*,
409 B.R. 847 (Bankr. S.D. Tex. 2009) ....................................................24

*James Madison Ltd. by Hecht v. Ludwig*,
82 F.3d 1085 (D.C. Cir. 1996) ...............................................................33

*Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004) ...............................................................12

*Khast v. Wash. Mut. Bank*,
No. 10-CV-2168-IEG (JMA), 2010 WL 5115094 (S.D. Cal. Dec. 9, 2010) ..........26

*King v. Kitchen Magic, Inc.*,
391 A.2d 1184 (D.C. 1978) ...................................................................13

*KiSKA Constr. Corp. v. Wash. Metro. Area Transit Auth.*,
321 F.3d 1151 (D.C. Cir. 2003) ...............................................................25

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994)...............................................................12

*Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*,
968 F. Supp. 1075 (E.D. Va. 1997) ........................................................31

*Lee v. Ashcroft*,
368 F.3d 218 (3d Cir. 2004)...................................................................25

*Mawalla v. Hoffman*,
  569 F. Supp. 2d 253 (D.D.C. 2008) ...........................................................................14

*Mullin v. Wash. Free Weekly, Inc.*,
  785 A.2d 296 (D.C. 2001) ....................................................................................17

*Murray v. Wells Fargo Home Mortg.*,
  953 A.2d 308 (D.C. 2008) ....................................................................................14

*Namerdy v. Generalcar*,
  217 A.2d 109 (D.C. 1966) ..............................................................................13, 20

*New World Commc'ns, Inc. v. Thompsen*,
  878 A.2d 1218 (D.C. 2005) ...................................................................................14

*Pardue v. Try City Consortium Schs., Inc.*,
  875 A.2d 669 (D.C. 2010) ....................................................................................14

*Perry v. Stewart Title Co.*,
  756 F.2d 1197 (5th Cir. 1985) .........................................................................22, 23

*Petro Star, Inc. v. FERC*,
  268 F. App'x 7 (D.C. Cir. 2008).............................................................................27

*Potter v. Dist. of Columbia*,
  558 F.3d 542 (D.C. Cir. 2009)...............................................................................17

*Rossmann v. Lazarus*,
  No. 1:08cv316 (JCC), 2008 WL 4642213 (E.D. Va. Oct. 15, 2008) .....................31

*Sayyad v. Fawzi*,
  674 A.2d 905 (D.C. 1996) ....................................................................................20

*Stone v. Harry*,
  364 F.3d 912 (8th Cir. 2004) ................................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..............................................................................................12

*Traguth v. Zuck*,
710 F.2d 90 (2d Cir. 1983)..................................................................31

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) ...........................................................................21

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) ....................................................................13, 29

*U.S. ex rel. Totten v. Bombardier Corp.*,
380 F.3d 488 (D.C. Cir. 2004) .......................................................6, 21

*Women Prisoners of Dist. of Columbia Dep't of Corr. v. Dist. of Columbia*,
93 F.3d 910 (D.C. Cir. 1996) ............................................................28

*Yeomalakis v. FDIC*,
562 F.3d 56 (1st Cir. 2009) ..............................................................24

Statutes

12 U.S.C. § 1811 ...............................................................................1

12 U.S.C. § 1821 ...................................................................1, 14, 15

12 U.S.C. § 2605 ...............................................................................1

12 U.S.C. § 2614 .............................................................................21

15 U.S.C. § 1681 ..........................................................................1, 21

15 U.S.C. § 1692 ..................................................................1, 2, 9, 22

28 U.S.C. § 1291 ...............................................................................2

28 U.S.C. § 1311 ...............................................................................1

28 U.S.C. § 1367 ........................................................................1, 28

D.C. Code § 12-301 ....................................................................13, 16

24 C.F.R. § 3500.2 ......................................................................................26

<u>Rules</u>

Fed. R. Civ. P. 12(b)(1)..............................................................................2

Fed. R. Civ. P. 12(b)(6)........................................................................2, 11

D.D.C. L. Civ. R. 15.1 ..............................................................................32

<u>Other Authorities</u>

Corbin on Contracts § 24.23
(Margaret N. Kniffin & Joseph M. Perilla eds., 1998) ............................................25

## JURISDICTIONAL STATEMENT

Appellant Nicholas J. DuBois ("DuBois") filed his Complaint in the United States District Court for the District of Columbia on or about November 17, 2009. The Complaint named as defendants Washington Mutual Bank ("Washington Mutual"), J.P. Morgan Chase Bank, N.A. ("JPMC"), Chase Home Finance LLC ("Chase Home Finance"), Federal National Mortgage Association ("Fannie Mae"), Federal Deposit Insurance Corporation ("FDIC"), Federal Housing Finance Agency ("FHFA"), Finestein & Malloy, LLC ("F&M"), and Tait O. Norton ("Norton").  The Complaint included twenty-two separate counts citing state statutes, state common law, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.  The Complaint also asserted federal claims against the FDIC, in both its corporate capacity and as the receiver for Washington Mutual, pursuant to the Federal Deposit Insurance Act (the "FDIA"), 12 U.S.C. § 1811.

The claims against the FDIC gave the District Court jurisdiction pursuant to 12 U.S.C. § 1821(d)(6).  The District Court also possessed federal question jurisdiction over this case pursuant to 28 U.S.C. § 1311 based upon the FCRA, FDCPA and RESPA claims.  And the District Court exercised supplemental jurisdiction over DuBois' remaining claims pursuant to 28 U.S.C. § 1367.

Through five separate motions, all defendants moved to dismiss the

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (and, in the case of

the FDIC, Rule 12(b)(1)).  On September 2, 2010, the District Court issued a

Memorandum Opinion granting the defendants' motions, simultaneously entering a

Final Judgment dismissing the Complaint in its entirety with prejudice.

DuBois filed a Notice of Appeal on October 6, 2010.  This Court has

appellate jurisdiction over this action pursuant to 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether the District Court Properly Dismissed DuBois' State Common Law, State Statutory Law, FCRA and RESPA Claims Against Chase Home Finance, Norton, and Fannie Mae As Time-Barred?

2.    Whether the District Court Properly Determined that DuBois' FDCPA Claim Against Chase Home Finance Failed as a Matter of Law Because Chase Home Finance Does Not Qualify as a Debt Collector Within the Meaning of 15 U.S.C. § 1692a(6)?

3.    Whether the District Court Properly Dismissed All of DuBois' Claims Against JPMC Because the Purchase and Assumption Agreement Executed by JPMC and the FDIC Expressly Disclaims Liability For Any Pre-Receivership Claims Against Washington Mutual?

4.    Did the District Court Abuse Its Discretion by Exercising Supplemental Jurisdiction over DuBois' State Law Claims, at His Request, And Ruling on their Merits, Where Such Claims are Part of the Same Case and Controversy as the Federal Claims and Which State Claims Presented No Novel or Complex Issue of State Law?

5.    Did the District Court Abuse Its Discretion by Denying Leave to Amend the Complaint Where DuBois Failed to Submit any Proposed Amendment and Any Such Amendment Would be Futile?

## STATEMENT OF THE CASE

The central dispute arises out of a mortgage loan issued to DuBois in 2001 by non-party HomeSide Lending, Inc ("HomeSide"). Docket Entry 1, Complaint ("Compl.") ¶ 18. In 2002, Washington Mutual acquired HomeSide, including its interest in the loan to DuBois. *Id.* Shortly thereafter, Washington Mutual transferred the Note and Mortgage evidencing the loan to Fannie Mae, while retaining servicing rights and obligations. *Id.* ¶ 21. Fannie Mae then brought a foreclosure action against DuBois in November 2002 (the "New Jersey Foreclosure Action"), which DuBois removed to federal court. *Id.* ¶¶ 20, 22. The New Jersey Foreclosure Action culminated in a Stipulation of Settlement and Order to which DuBois, Fannie Mae and Washington Mutual were parties, and which the New Jersey District Court formally entered on August 9, 2004. *Id.*, Exhibit B ("Stipulation"), Docket Entry 1-1 at 11-19.

Although the New Jersey Foreclosure Action was settled and dismissed with prejudice, DuBois resumed fighting with Fannie Mae and Washington Mutual almost immediately. *See*, *e.g.*, Compl. ¶¶ 41-62. That fight continued throughout 2005, *id.* ¶¶ 63-90, and, as far as the Complaint relates, ended in January 2006 when F&M ceased communicating with DuBois on behalf of Fannie Mae and Washington Mutual. *Id.* ¶ 91. Though the factual allegations in the Complaint resume briefly to recount the September 2008 failure of Washington Mutual and its

3

subsequent takeover by the FDIC, *id.* at ¶¶ 105-107, the most recent allegations that arguably relate to alleged wrongdoing by any of the Appellees date from January 2006.[1]  Yet, DuBois did not file his Complaint in this matter until November 17, 2009.

In the interim, the financial crisis claimed Washington Mutual as a victim, and the Office of Thrift Supervision issued an order appointing the FDIC as Washington Mutual's receiver.  Shortly thereafter, the FDIC transferred Washington Mutual's assets to JPMC pursuant to a Purchase and Assumption Agreement (the "P&A Agreement").  *Id.* ¶ 106.  As explained more fully below, however, with only a few limited exceptions, JPMC did not assume Washington Mutual's liabilities.  Following execution of the P&A Agreement, Chase Home Finance began servicing DuBois' account.  *Id.* ¶ 107.

Before filing the Complaint, DuBois filed an administrative claim against the FDIC, which was denied by letter dated September 18, 2009.  *Id.* ¶¶ 108-110.  He eventually filed the Complaint in District Court asserting twenty-two causes of action against eight defendants.  After the voluntary dismissal of FHFA pared the

---

[1] The Complaint also includes one additional allegation regarding a letter sent in March 2006 on behalf of Fannie Mae and Washington Mutual by a new law firm that had substituted for F&M.  Compl. ¶ 95.  That allegation, however, expressly states that this letter "rehashed" a prior accounting DuBois was already aware of, and thus there can be no contention that this letter extended the accrual date of DuBois' claims.  Nevertheless, because this allegation concerns an event that occurred more than three years before DuBois filed the Complaint, adopting it as the latest possible accrual date would not alter the analysis.

number of defendants to seven, the remaining defendants moved to dismiss.
Docket Entries 7, 12, 20, 22, 24.

The District Court granted the motions and dismissed the Complaint in its
entirety.  Docket Entry 47, Memorandum Opinion ("Op.").  First addressing the
claims against JPMC, the District Court analyzed the language of the P&A
Agreement and held that it expressly barred DuBois' claims.[2]  Op. at 6.

Turning to the claims against Norton (a former Washington Mutual and
then-current JPMC employee), which included common law causes of action for
various forms of fraud, negligent misrepresentation, conversion, tortious
interference, civil conspiracy, and breach of fiduciary duty, the District Court held
each of them barred by the applicable statute of limitations.  The District Court
explained that because the claims were before it via supplemental jurisdiction,
District of Columbia choice of law rules governed and dictated applying District of
Columbia statutes of limitations, none of which is longer than three years.  And
drawing directly from DuBois' allegations, the Court found that all of the claims
accrued no later than January 2006, which proved fatal, given DuBois' failure to
file the Complaint until November 17, 2009.

---

[2] Because DuBois incorporated it into his Complaint by reference, Compl. ¶ 106,
the District Court took judicial notice of the P&A Agreement, noting that it was
available at
http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.  Op. at 6
& n.2.  Appellees request that the P&A Agreement be included in the Record on
Appeal.

DuBois' causes of action against Chase Home Finance similarly failed to state a claim. Op. at 9-11. Specifically, the Court determined that the declaratory judgment claim was barred by the statute of limitations, the alleged violation of New Jersey's Fair Credit Reporting Act (the "NJFCRA") was preempted by the federal FCRA,[3] the FCRA claim was time-barred, and the FDCPA claim failed as a matter of law because DuBois effectively conceded that Chase Home Finance did not fit the statutory definition of a "debt collector." *Id.*

Finally, the District Court rejected all nineteen causes of action asserted against Fannie Mae. Op. at 12-13, 16. As with the claims against Norton and Chase Home Finance, the District Court held that the state common law causes of action were time-barred, the NJFCRA claim was preempted by the FCRA, and the FCRA claim was also time-barred. In addition, the District Court found DuBois' state law statutory consumer fraud and federal RESPA claims were both untimely, each being subject to a three-year statute of limitations.[4]

Having found that the Complaint failed to state a valid claim against any

---

[3] DuBois did not appeal the District Court's ruling on preemption, so it is waived. *See U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("Ordinarily, arguments that parties do not make on appeal are deemed to have been waived.").

[4] The District Court also dismissed DuBois' claim against Fannie Mae alleging a violation of the FDIA for failure to state a claim. Because DuBois' appellate brief makes no mention of this ruling, his FDIA claim is waived. *See Totten*, 380 F.3d at 497.

defendant, the District Court dismissed the action with prejudice and entered Final

Judgment, from which Dubois now appeals.  Op. at 17; Docket Entry 48 (Final

Judgment); Docket Entry 49 (Notice of Appeal).

### SUMMARY OF ARGUMENT

The claims asserted in the Complaint are based on old factual allegations,

the most recent of which date from January 2006.  Though nothing prevented

DuBois from suing earlier and he now laments his decision, DuBois consciously

chose to delay filing suit until November 2009.  That delay, coupled with the

intervening events of the global financial crisis, held important implications for

this lawsuit.  Because DuBois elected to assert claims against the FDIC, federal

statute required him to file this suit in the United States District Court for either the

District of Columbia or the Western District of Washington.  He selected the

former as his forum and, as a result, District of Columbia choice of law rules

governed his state law claims.  District of Columbia law treats the statute of

limitations as a procedural issue to which the law of the forum applies, and under

District of Columbia law, none of the state law claims asserted by DuBois carried a

statute of limitations longer than three years.  The District Court correctly analyzed

these choice of law principles in holding DuBois' state law claims subject to three-

year statutes of limitations.

The District Court likewise properly determined that the causes of action

7

DuBois asserted against Chase Home Finance, Norton, and Fannie Mae accrued no later than January 2006.[5]  As his pleadings acknowledge, DuBois had been engaged in a long-running dispute with Fannie Mae and Washington Mutual ever since the New Jersey Foreclosure Action settled back in 2004.  The latest date the Complaint assigns to any allegation of wrongdoing is January 2006, and thus DuBois' own pleadings belie any assertion that his claims accrued after that date.  Accordingly, the District Court correctly held that all of DuBois' state law claims were barred by the applicable statutes of limitations because DuBois delayed in filing suit until November 2009, well over three years after the claims accrued and after the limitations period had expired.

DuBois' federal claims under RESPA and FCRA were similarly untimely.  Like all of Dubois' state law claims, RESPA claims are also subject to a three-year statute of limitations period, while the limitations period that applies to FCRA claims is even shorter:  two years.  Measuring from the same January 2006 accrual date, the District Court correctly held that those claims, too, were time-barred.

Though he accused Chase Home Finance of violating the FDCPA, DuBois maintained both that Chase Home Finance (a) acted as the servicer for his

---

[5] As the District Court correctly observed, the Complaint itself does not actually suggest an accrual date as late as January 2006; that is simply the latest date set forth in the factual allegations, which the District Court adopted as the latest potential accrual date for purposes of analysis.  In reality, the Complaint makes clear that DuBois was aware of the defendants' alleged improprieties--and in fact complained about them--as early as 2004.

mortgage loan and (b) acquired the loan when it was not in default. With these two statements, DuBois defeated his own cause of action. The FDCPA applies to "debt collectors" that fit the definition of the term contained in 15 U.S.C. § 1692a(6), but the statute excludes from its coverage "any person collecting or attempting to collect . . . a debt which was not in default at the time it was obtained by such person," 15 U.S.C. § 1692(a)(6)(F)(iii). Courts construing this statute have held that this language conclusively excludes mortgage servicers attempting to collect debts that were not in default when acquired, and the District Court correctly followed this precedent in holding that the FDCPA claim failed as a matter of law.

As for the nineteen causes of action DuBois asserted against JPMC, the District Court did not need to address the timeliness issues because, as it correctly held, the P&A Agreement completely barred all such claims. DuBois only named JPMC as a defendant due to its acquisition of certain Washington Mutual assets and liabilities in September 2008; all of the Complaint's operative factual allegations related to conduct by Washington Mutual that occurred long before that acquisition (and at the latest in January 2006). The P&A Agreement, incorporated by reference into the Complaint, included a broad liability disclaimer that encompassed all the claims at issue here, barring relief against JPMC.

Moreover, had the District Court assessed the timeliness of the claims against JPMC, it would have reached the same conclusion as it did with respect to

9

Chase Home Finance, Fannie Mae, and Norton:  that the applicable statutes of limitations bar DuBois' causes of action.  DuBois' claims against JPMC were identical--both factually and legally--to those he asserted against the other defendants.  Consequently, the same statutes of limitations also preclude DuBois' claims against JPMC as a matter of law.

Finally, contrary to DuBois' assertions, not only did the District Court correctly dismiss the entire Complaint, but its entry of a dismissal with prejudice and without leave to amend was entirely proper.  Though DuBois claims that a lower pleading standard should have applied to him because he represents himself, as a licensed attorney he is entitled to none of the leniency generally afforded to *pro se* litigants.  DuBois' professional obligations as an attorney, including his responsibility to know and comply with the pleading rules contained in the Federal Rules of Civil Procedure, traveled with him when he chose to file suit in the District of Columbia and to represent himself in the action.  He cannot shed those obligations merely by pointing to his own name in the "plaintiff" column of the caption.  And dismissal with prejudice was appropriate because permitting amendment would have been futile.  The Complaint discloses that DuBois' claims accrued no later than January 2006, and the vague and unsubstantiated assertions of "continuing violations" contained for the first time in his appellate brief do nothing to alter the time of accrual.  Similarly, no pleading amendment could

remove the bar to liability against JPMC established by the P&A Agreement, nor does DuBois offer any explanation as to how he could have remedied the substantive flaws in his FDCPA claim against Chase Home Finance.  Because amendment could not have cured any of the defects that doomed his Complaint in the first place, granting leave to amend would have been futile.  The District Court did not abuse its discretion in refusing to do so.

## <u>ARGUMENT</u>

**I.     THE DISTRICT COURT PROPERLY DISMISSED DUBOIS' STATE COMMON LAW, STATE STATUTORY LAW, FCRA AND RESPA CLAIMS AGAINST CHASE HOME FINANCE, NORTON, AND FANNIE MAE AS TIME-BARRED.**

**A.     Standard of Review.**

The District Court granted the Appellees' motions to dismiss under Rule 12(b)(6), so this Court's review is *de novo*. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rather, the plaintiff must plead "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When deciding a Rule 12(b)(6) motion, a court may consider documents incorporated into the complaint by reference and matters that are proper for judicial notice, without converting the motion into one for summary judgment.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Although

the court is required accept the plaintiff's factual allegations as true, it need not

accept conclusory allegations regarding the legal effects of the facts alleged, *Kowal*

*v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), and may not accept

as true allegations contradicted by exhibits attached to or incorporated in the

pleadings.  *Kaempe v. Myers*, 367 F.3d 958, 962 (D.C. Cir. 2004).

### B.    The District Court Correctly Determined that the Three-Year Statute of Limitations Supplied by District of Columbia Law Applies to DuBois' State Law Claims.

DuBois' Complaint asserted a host of state common law claims against

Chase Home Finance, Norton, and Fannie Mae, including several claims for fraud,

negligent misrepresentation, conversion, tortious interference with prospective

economic advantage, civil conspiracy, negligence, breach of fiduciary duty, aiding

and abetting fraud, breach of contract, breach of the implied covenant of good faith

and fair dealing, unjust enrichment, and promissory estoppel.  He also brought

claims alleging violations of New Jersey state statutes, which included a statutory

consumer fraud claim against Fannie Mae.  Because all of these claims were before

it on supplemental jurisdiction, the District Court concluded that District of

Columbia choice of law rules governed, which mandated applying the District of

Columbia's statutes of limitations.

On appeal, DuBois challenges the District Court's decision to apply District

of Columbia statutes of limitations, arguing instead that New Jersey's longer statutes should have applied. But his argument suffers from at least two fatal flaws.

First, the District Court's choice of law analysis was governed by fundamental, black-letter law that it applied correctly. Where a federal court must decide issues regulated only by state law, including when exercising supplemental jurisdiction under 28 U.S.C. § 1367, the court "applies the forum state's choice of law rules and the state statute of limitations indicated thereby." *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Under the District of Columbia's choice of law principles, forum law applies to matters of procedure, and unless the limitations period "is part of the cause of action itself, [a] limitation on the time of suit is procedural and is governed by the law of the forum.'" *Huang v. D'Albora*, 644 A.2d 1, 4 (1994) (quoting *Namerdy v. Generalcar*, 217 A.2d 109, 113 (D.C. 1966)). As the District Court painstakingly demonstrated in its opinion, District of Columbia law uniformly applies a three-year limitations period to each of the many state law claims asserted by DuBois. *See* D.C. Code § 12-301; *C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 261 (D.D.C. 2007) (fraud and negligent misrepresentation); *Clouser v. Temporaries, Inc.*, 730 F. Supp. 1127, 1131 (D.D.C.

1989) (constructive fraud); *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186

(D.C. 1978) (claims sounding in fraud); *Forte v. Goldstein*, 461 A.2d 469, 472

(D.C. 1983); (conversion); *Habib v. Raytheon Co.*, 616 F.2d 1204, 1208 (D.C. Cir.

1980) (tortious interference and civil conspiracy*); Griggs v. Wash. Area Metro.

Transit Auth.*, 232 F.3d 917, 919 (D.C. Cir. 2000) (negligence); *Mawalla v.

Hoffman*, 569 F. Supp. 2d 253, 257 (D.D.C. 2008) (breach of fiduciary duty);

*Hancock v. Homeq Servicing Corp.*, No. 05-0307, 2007 WL 1238746, at *8

(D.D.C. Apr. 27, 2007) (aiding and abetting fraud); *Pardue v. Try City Consortium

Schs., Inc.*, 875 A.2d 669, 679 (D.C. 2010) (breach of contract); *Murray v. Wells

Fargo Home Mortg.*, 953 A.2d 308, 322 (D.C. 2008) (breach of implied covenant

of good faith and fair dealing); *New World Commc'ns, Inc. v. Thompsen*, 878 A.2d

1218, 1221 (D.C. 2005) (unjust enrichment).  Though he dislikes this result,

DuBois supplies no authority to contradict any portion of this analysis.

Second, the entire premise of DuBois' argument--that he was statutorily

compelled to file suit in the District of Columbia, rather than in New Jersey,

making it unfair to apply the District of Columbia's shorter limitations period to

his state law claims--is misguided.  While it is true that if he wished to challenge

the FDIC's denial of his administrative proof of claim, 12 U.S.C. § 1821(d)(6)

limited his choice of venues, the District of Columbia statutes of limitations apply

to his claims against the Appellees not as a matter of compulsion, but as the result

of a string of strategic decisions DuBois made with respect to this litigation.  *See*
*Ackermann v. United States*, 340 U.S. 193, 198 (1950) (A litigant's "free,
calculated, deliberate choices are not to be relieved from.").  DuBois could have
brought suit in New Jersey based upon the allegations in the Complaint at any time
after the complained-of events occurred between 2004 and January 2006.
Stipulation at 4, ¶ 6.[6]  Instead, he delayed until November 2009.  Though under no
obligation to do so, he then elected to sue the FDIC to challenge its denial of his
proof of claim.  12 U.S.C. § 1821(d)(6) required him to bring that specific suit in
one of two venues, and he selected the District of Columbia.[7]  When bringing that
suit, moreover, DuBois consciously chose to append to his claims against the FDIC
all of his state law causes of action against seven other defendants, and to invoke
the District Court's supplemental jurisdiction over those claims.  Nothing forced
DuBois to make any of the tactical decisions he did, let alone all of them in

---

[6] Under the Stipulation of Settlement and Order entered in the New Jersey
Foreclosure Action, the United States District Court for the District of New Jersey
expressly retained jurisdiction for purposes of enforcing the Stipulation.

[7] Had he instead chosen to sue in the Western District of Washington, the other
available venue, it appears that Washington state's choice of law rules would have
called for applying New Jersey's statutes of limitations. *See Ellis v. Barto*, 918
P.2d 540, 542 (Wash. Ct. App. 1996) (Under Washington law, if a claim is
substantively based on the law of another state, the limitation period of that state
applies; and when determining which state's substantive law applies to a tort claim,
Washington applies the "most significant relationship" test, which generally selects
the law of the state where the injury occurred.).  This further reveals the
application of District of Columbia law as the product of failed litigation strategy,
not, as DuBois would have it, unavoidable statutory requirements.

combination.  At any time, he could have sued the Appellees in New Jersey, where the choice of law analysis and, thus, the applicable statute of limitations might have differed, yet he never did.

Moreover, even if sympathy could be generated for DuBois because of the statutory venue limitations applied to actions brought against the FDIC, he nonetheless could have filed this case in the U.S. District Court for the District of Columbia before the applicable three-year statute of limitations lapsed.  Because the claims process with the FDIC was resolved shortly thereafter, he could have easily amended his Complaint to add the FDIC following the exhaustion of his administrative remedies.  As a practicing attorney, licensed to practice in several states, DuBois must have considered but, for some reason, rejected this option. Had he pursued it, however, there would have been no limitations bar.  Here again, this Court cannot save DuBois from the consequences of his own poor judgment.

DuBois' regret over the failed litigation tactics that led to this point provides no reason to deviate from the clear choice of law principles that unquestionably apply as a result of his choices.

### C.    The District Court Correctly Found that DuBois' Claims Accrued No Later Than January 2006 and, Therefore, Were Barred by the Statute of Limitations.

Under the District of Columbia statute of limitations, the limitations period begins to run "from the time the right to maintain the right of action accrues."

D.C. Code § 12-301.  As a general rule, "[w]here the fact of an injury can be readily determined, a claim accrues for purposes of the statute of limitations at the time the injury actually occurs." *Mullin v. Wash. Free Weekly, Inc.*, 785 A.2d 296, 298 (D.C. 2001).  In some cases, where "the relationship between the fact of injury and the alleged tortious conduct [is] obscure," the "discovery rule" may apply, in which case the statute "will not run until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing." *Colbert v. Georgetown Univ.*, 641 A.2d 469, 472-73 (D.C. 1994).

Here, the District Court found that, although the allegations demonstrated that DuBois was aware of the alleged misconduct as early as 2004 and complained about it to the defendants at that time, in no event did his claims accrue any later than January 2006.  As the long-running disagreement recounted in the Complaint shows, DuBois had knowledge of the facts giving rise to his alleged injuries essentially as they occurred; the discovery rule is not at issue.[8]  Indeed, DuBois' pleadings acknowledge that he brought his complaints to the attention of Washington Mutual and Fannie Mae beginning in 2004.  And it cannot be disputed

---

[8] DuBois now offers a perfunctory argument that affirmative concealment by the defendants should have tolled the statute of limitations.  Br. at 11.  DuBois did not press this argument in opposition to the motions to dismiss, thus waiving it. *See Potter v. Dist. of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009) ("[T]his court reviews only those arguments that were made in the district court, absent exceptional circumstances.").  Even if DuBois had preserved the argument, it would still fail on the merits because the Complaint fails to state any allegations of concealment.

that the January 2006 date the District Court selected represents the latest date the Complaint assigns to alleged misconduct by any of the Appellees. Accordingly, the District Court did not err in choosing January 2006 as the date DuBois' claims accrued; if anything, given the dispute's origins in 2004, this selection was overly cautious. DuBois offers several arguments in an effort to call the District Court's use of the January 2006 accrual date into question, all of them unavailing.

DuBois begins by arguing that the January 2006 accrual date "ignores the new representation pled at compl. ¶¶ 93 *et seq.*," Br. at 10, but review of the allegation he points to shows that it concerns contact DuBois received from a law firm "[s]ometime in or about December 2005." Compl. ¶ 93. And the allegations that follow paragraph 93 are similarly unhelpful to his argument, given that none of them occurred within three years of the filing of the Complaint.

Next, DuBois attempts to fault the District Court's use of the January 2006 date because, he contends, it is just an "illustrative example," "one of a continuing and repeated set of breaches and torts in which appellees were engaged, disregarding the open-ended language of other averments in the complaint." Br. at 10. He fails, however, to identify any of these "other averments," and one searches the text of the Complaint for them in vain. The fact remains that DuBois did not plead a single allegation of misconduct that occurred within three years of his filing the Complaint. To the extent he sought to rely on allegations phrased in

18

"open-ended language" to bring the case within the statute of limitations, those obviously do not meet the pleading standards set by *Twombly* and *Iqbal*, which "demand[] more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 129 S.Ct. at 1949.  In any event, his appellate brief fails even to explain what allegations he is referring to.

Similarly, DuBois' effort to set a different accrual date merely by mentioning dates from 2007 and 2008 in his appellate brief also fails.  For example, he states that he "endeavored to obtain an accounting in 2007 and beyond but was rebuffed and/or ignored."  Br. at 10.  This statement, however, appears nowhere in the Complaint.  Such unsubstantiated statements in an appellate brief about allegations he might have, but did not, include in the Complaint do nothing to cast doubt on the District Court's analysis.[9]  Moreover, even if he had pleaded such an allegation, it would not change the accrual date because, as the Complaint makes clear, DuBois had long been aware of the alleged accounting issues with his loan.  Likewise, his assertion that some unspecified violations were "continuing and repeated" also fails, both because he failed to plead them in the Complaint and because DuBois was aware of the alleged misconduct more than three years before he filed suit.

---

[9] *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (where District Court properly identified claims alleged in plaintiff's complaint, Court of Appeals would "not consider additional allegations or arguments raised on appeal that were not discussed by the district court.").

DuBois also claims that the District Court should have applied equitable tolling to suspend the statutes of limitations while he attempted to exhaust his administrative remedies against the FDIC.  Br. at 14.  The District of Columbia, however, "is one of a minority of jurisdictions that has not adopted a general equitable 'saving' statute to toll statutes of limitations in cases of reasonable mistake."  *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 156 (D.C. 1998).  Courts applying District of Columbia law have steadfastly refused to usurp the legislative function and adopt equitable tolling exceptions to general statutes of limitations.  *See Huang*, 644 A.2d at 3 (citing *Namerdy*, 217 A.2d at 113; *Curtis v. Aluminum Ass'n*, 607 A.2d 509 (D.C. 1992); *Bond v. Serrano*, 566 A.2d 47 (D.C. 1989)).  District of Columbia law thus demands strict enforcement of its statutes of limitations, and courts refuse to apply equitable tolling even where "the rationale for the limitations doctrine will not be served, and a dismissal would frustrate the well-established preference for adjudicating cases on their merits."  *Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996) (refusing to toll statute of limitations where the plaintiff made a good faith mistake of forum).  DuBois' protestations notwithstanding, District of Columbia law does not permit equitable tolling to apply.  Moreover, even if the law allowed it, DuBois fails to present any persuasive reason why his purported need to exhaust his administrative remedies against the FDIC should have suspended the limitations periods on his claims

20

against the Appellees.  The Appellees were not parties to the agency proceedings

and DuBois could have sued them at any time, but chose not to do so.

> **D.   The District Court Properly Held that the Applicable
> Statutes of Limitations Barred DuBois' FCRA and RESPA
> Claims.**

Applying the same January 2006 accrual date that governed his state law

claims, the District Court dismissed DuBois' federal FCRA and RESPA claims as

time-barred.  His appellate brief fails to raise any differentiated argument as to

these claims, so they may be deemed abandoned or otherwise waived.  *See U.S. ex*

*rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497 (D.C. Cir. 2004) ("Ordinarily,

arguments that parties do not make on appeal are deemed to have been waived.").

Nevertheless, to the extent DuBois seeks to appeal the disposition of these claims,

his appeal lacks merit.  Like his state law claims, DuBois' claims under the FCRA

accrued at the at the time he knew or should have known of the injury.  *TRW Inc. v.*

*Andrews*, 534 U.S. 19, 30 (2001).  And his RESPA claims accrued at the time of

the alleged violation.  12 U.S.C. § 2614.  In either case, the claims accrued no later

than January 2006, the latest date of any alleged misconduct by the Appellees.

Given that DuBois' FCRA claims are subject to a two-year statute of limitations,

15 U.S.C. § 1681p,[10] and his RESPA claims carry a three-year statute, 12 U.S.C.

§ 2614, the District Court was correct in holding that both were time-barred.

---

[10] FCRA claims must be brought within the earlier of two years of the date the
plaintiff discovers the violation or five years of the violation.  15 U.S.C. § 1681p.

## II.     THE DISTRICT COURT PROPERLY DISMISSED DUBOIS' FDCPA CLAIMS BECAUSE CHASE HOME FINANCE DOES NOT QUALIFY AS A DEBT COLLECTOR WITHIN THE MEANING OF 15 U.S.C. § 1692a(6)(F)(III).

DuBois devotes half a sentence in his brief to his FDCPA claim, accusing the District Court of "fail[ing] to accept as true on the pleadings that [Chase Home Finance] represents itself as [a] debt collector" when it dismissed this count.  Br. at 19.  Though his Complaint alleges that Chase Home Finance sent him a "Debt Validation Notice" and summarily concludes that Chase Home Finance is a debt collector for purposes of the FDCPA, it does not actually allege that Chase represented itself as a debt collector, nor does it plead facts that would support such a conclusion.  Rather, as the District Court held, the Complaint affirmatively pleads facts that preclude such a finding as a matter of law.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The statute, however, explicitly excludes from its coverage "any person collecting or attempting to collect . . . a debt which was not in default at the time it was obtained by such person," 15 U.S.C. § 1692(a)(6)(F)(iii).  In crafting this exclusion, Congress specifically intended to carve out mortgage servicers from the definition.  *Perry v. Stewart Title Co.*, 756

22

F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6)

indicates conclusively that a debt collector does not include . . . a mortgage

servicing company . . . as long as the debt was not in default at the time it was

assigned."); *see also Bailey v. Nat'l Servicing Corp.*, 154 F.3d 384, 388 (7th Cir.

1998) (servicer attempting to collect on a debt under a forbearance agreement that

was not in default did not fit the definition of a debt collector).

DuBois' Complaint alleges that Chase Home Finance serviced his loan,

which he asserts was not in default when Chase acquired it.  Compl. ¶ 107; Docket

Entry 28, Plaintiff's Memorandum in Opposition to Motions to Dismiss at 26 ("In

this case plaintiff alleges the loan was not in default when obtained by

Defendants…").  As the District Court recognized, these statements render

DuBois' FDCPA claim defective as a matter of law.

## III.     THE DISTRICT COURT PROPERLY HELD THAT THE P&A AGREEMENT BARRED ALL OF DUBOIS' CLAIMS AGAINST JPMC.

The District Court reviewed and analyzed the P&A Agreement pursuant to

which JPMC acquired Washington Mutual's assets and certain liabilities from the

FDIC and found that it barred DuBois' claims against JPMC in this action.  On

appeal, DuBois challenges this finding, claiming that the District Court misread the

P&A Agreement by concluding that the liability exclusion in Section 2.5 of the

Agreement encompasses claims arising out of Washington Mutual's loan servicing

obligations. DuBois' argument, like the bankruptcy court case he relies on for support, *In re Pena*, 409 B.R. 847 (Bankr. S.D. Tex. 2009), rests on a flawed interpretation of the P&A Agreement.

Section 2.5 of the P&A Agreement specifically disclaims liability for **claims** made by borrowers that arise out of Washington Mutual's loan-related activities. It provides, in pertinent part:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of . . . monetary relief . . . related in any way to . . . any loan made by a third party in connection with a loan which is or was held by [Washington Mutual], or otherwise arising in connection with [Washington Mutual]'s lending or loan purchase activities are specifically not assumed by [JPMC].

P&A Agreement at 9, Art. II § 2.5.

DuBois' claims against JPMC relate exclusively to the pre-receivership conduct of Washington Mutual with respect to his loan. He clearly is a "borrower" making a claim for "monetary relief" that is "related in any way" to a "loan made by a third party which is or was held by Washington Mutual" in its capacity as servicer. Accordingly, under the P&A Agreement, liability for DuBois' claims, if any, remained with the FDIC. *See Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009) (Holding that Section 2.5 "retains for the FDIC 'any liability associated with borrower claims for payment of or any liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower.'"). Thus, JPMC

is not a proper defendant, and DuBois' claims against it are completely barred.

The argument DuBois presents on appeal--the same one he advanced below, which the District Court properly rejected--violates fundamental principles of contract interpretation.  Pointing to Section 2.1 of the P&A Agreement, whereby JPMC agreed to assume "all mortgage servicing rights and obligations of [Washington Mutual]," he posits that the claims against JPMC arose in connection with "servicing . . . **obligations**" that JPMC assumed.  *See* P&A Agreement at 8, Art. II § 2.1 (emphasis added).  His reading, and the analysis in *Pena* it mimics, fails to accord with the "settled principle of contract interpretation . . . that when a word or phrase is used generally, and then later defined more narrowly, the narrow, more specific definition applies."  *Adem v. Bush*, 425 F. Supp. 2d 7, 21 (D.D.C. 2006) (citing 5 Corbin on Contracts § 24.23 (Margaret N. Kniffin & Joseph M. Perilla eds., 1998); *Lee v. Ashcroft*, 368 F.3d 218, 223 (3d Cir. 2004)).  Though he attempts to read the general term "obligations" in Section 2.1 to include the alleged Washington Mutual liability he seeks to impose on JPMC, subsequent Section 2.5 employs the specific term "liability" when defining the types of claims against Washington Mutual for which JPMC did not assume liability.  The later, more specific definition controls.

DuBois' construction conflates the narrower "claims" in Section 2.5 with the more general "obligations" in Section 2.1.  As recognized by federal regulation,

servicing obligations mean the manner in which a loan servicer processes a

borrower's payments:

> Servicing means receiving any scheduled periodic payments from a
> borrower pursuant to the terms of any mortgage loan, including
> amounts for escrow accounts under section 10 of RESPA (12 U.S.C.
> 2609), and making the payments to the owner of the loan or other
> third parties of principal and interest and such other payments with
> respect to the amounts received from the borrower as may be required
> pursuant to the terms of the mortgage servicing loan documents or
> servicing contract.  In the case of a home equity conversion mortgage
> or reverse mortgage as referenced in this section, servicing includes
> making payments to the borrower.

24 C.F.R. § 3500.2 (definition of servicer under RESPA regulations).

This conclusion--that the narrow term "claims" in Section 2.5 refers to

something quite different than the general term "obligations" in Section 2.1--is

expressly reinforced by the structure of Article II of the P&A Agreement.  Section

2.1 begins by specifying that it is "Subject to Section 2.5," while Section 2.5

prefaces that its liability exclusion applies "[n]otwithstanding anything to the

contrary in this Agreement."  P&A Agreement at 8-9.  Read as a whole and in

accordance with sound principles of contract interpretation, the P&A Agreement

bars DuBois' claims against JPMC.  *See KiSKA Constr. Corp. v. Wash. Metro.

Area Transit Auth.*, 321 F.3d 1151, 1163 (D.C. Cir. 2003) ("The law requires

contracts to be read as a whole, with meaning given to every provision contained

therein.").  Addressing the interplay between these two sections, several courts,

including the District Court below, have held that the general language in Section

26

2.1 cannot trump the specific liability disclaimer in Section 2.5. *See Khast v. Wash. Mut. Bank*, No. 10-CV-2168-IEG (JMA), 2010 WL 5115094, at *2-3 (S.D. Cal. Dec. 9, 2010); *Cassese v. Wash. Mut., Inc.*, No. 05-cv-2724(ADS)(ARL), 2008 WL 7022845, at *2 (E.D.N.Y. Dec. 22, 2008). This Court should do the same.

Moreover, even if the P&A Agreement did not bar DuBois' claims against JPMC, the applicable statutes of limitations would. DuBois' claims against JPMC were based on the same facts and legal theories as his claims against the other Appellees. As explained above, the longest statute of limitations on any of those claims is three years, while the latest date the Complaint assigns to any alleged wrongdoing is January 2006. Consequently, DuBois' claims against JPMC are similarly time-barred.

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN EXERCISING SUPPLEMENTAL JURISDICTION AND RULING ON THE MERITS OF DUBOIS' STATE LAW CLAIMS.

DuBois further claims that the District Court could and should have saved his state law claims from dismissal by refusing to exercise supplemental jurisdiction, Br. at 13-16, notwithstanding the fact that by including them in his Complaint he necessarily asked the District Court to hear them. *See Petro Star, Inc. v. FERC*, 268 F. App'x 7, 10 (D.C. Cir. 2008) ("No unfairness exists where the complaining parties . . . invited the error . . .").  For purposes of appeal, the

27

only question is whether the District Court abused its discretion by exercising

supplemental jurisdiction here.  *See Women Prisoners of Dist. of Columbia Dep't*

*of Corr. v. Dist. of Columbia*, 93 F.3d 910, 920 (D.C. Cir. 1996) ("A district

court's decision to resolve state law claims is reviewed for an abuse of

discretion.").  The answer is no.

     Where a case presents a legitimate federal question, the supplemental

jurisdiction statute, 28 U.S.C. § 1367, gives the district courts the power to hear

and decide state law claims arising out of the same case or controversy.[11]  Whether

to exercise that power "is a matter left to the sound discretion of the district court,

guided by consideration of the factors enumerated in 28 U.S.C. § 1367(c)."

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265-66

(D.C. Cir. 1995); *see also Diven v. Amalgamated Transit Union & Local 689*, 38

F.3d 598, 601 (D.C. Cir. 1994) ("the statute fairly exudes deference to judicial

discretion").  The pertinent factors include whether the claims raise novel or

complex issues of state law, whether the state claims predominate over the federal

claims, whether the court has dismissed the claims over which it possessed original

jurisdiction, and whether "other compelling reasons" exist for declining

jurisdiction.  28 U.S.C. § 1367(c).  While the statute allows the court to decline

---

[11] It is beyond dispute both that the Complaint, which raised claims under the
FCRA, FDCPA, FDIA, and RESPA, presented legitimate federal questions, and
that the related state law claims, which arose out of the exact same nucleus of facts,
formed part of a single case or controversy.

supplemental jurisdiction if it "'has dismissed all claims over which it has original jurisdiction,' [t]he discretionary language of the statute makes it clear that the court may also choose to preserve its supplemental jurisdiction." *Harris v. Sec'y, U.S. Dep't of Vet. Affairs*, 126 F.3d 339, 346 (D.C. Cir. 1997).

Here, the District Court did not abuse its discretion in ruling on DuBois' state law claims. These claims undeniably formed part of the same case or controversy as his numerous federal claims, and did not raise any novel or complex issues of state law. DuBois does not even argue to the contrary. *See* Br. at 15. On the contrary, the asserted fraud, negligence, and breach of fiduciary duty claims asserted in the Complaint presented the sort of routine state law torts all federal courts are well-equipped to handle. Nor did DuBois' state law claims substantially predominate over his federal causes of action. In this context, substantial predomination only exists "where 'a state claim constitutes the real body of a case, to which the federal claim is only an appendage'--only where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 789 (3d Cir. 1995) (quoting *Gibbs*, 383 U.S. at 727). That is far from what happened here, where the Complaint asserted numerous federal claims that arose out of the same facts as the state claims and sought similar relief. So while the District Court dismissed all the claims over which it possessed original

jurisdiction, it acted well within its broad discretion in exercising supplemental jurisdiction and simultaneously ruling on DuBois' state law claims as well.

## V. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING LEAVE TO AMEND WHERE DUBOIS FAILED TO SUBMIT ANY PROPOSED AMENDMENT AND ANY SUCH AMENDMENT WOULD BE FUTILE.

Throughout his Complaint, DuBois disclaims responsibility for his inadequate pleadings under the guise of his self-representation, claiming entitlement to leniency with the Rules and accusing the District Court of erring by refusing him an opportunity to re-plead. He is wrong on both fronts. As a licensed attorney who chose to bring this action in federal court and to represent himself, he enjoys none of the pleading liberalities extended to legitimate *pro se* litigants. In any event, the District Court correctly dismissed the Complaint with prejudice because DuBois failed to comply with the Local Rules regarding amendments and granting leave to amend would have been futile.

### A. Because DuBois is a Licensed Attorney He Is Not Entitled to Any Leniency in Complying With the Federal Rules of Civil Procedure.

Reviving a theme he relied upon heavily in the District Court, DuBois' appeal repeatedly invokes his *pro se* status in an effort to excuse his pleading failures. In fact, the District Court improperly accepted this argument, noting in its opinion that it was "mindful of its duty to read DuBois's allegations liberally, as he is a *pro se* litigant." Op. at 4. Nevertheless, the District Court emphasized, "not

30

even a liberal interpretation of plaintiff's pleadings can salvage a single one of his claims from being dismissed." *Id.* Though correct in its ultimate conclusion, the District Court need not--and should not--have afforded a licensed attorney any benefit from his decision to forego separate representation in this action.

It is true that Supreme Court precedent requires that courts "construe *pro se* filings liberally," and hold the pleadings of *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The obvious rationale for relaxing the standards is to "protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). That rationale, and the factual basis for the Supreme Court's holding in *Haines*, disappears when the litigant is an attorney with the benefit of a legal education. Because DuBois is a lawyer, his Complaint must be held to the same standards as other lawyers; the fact that he serves as his own client entitles him to no benefit. *See Rossmann v. Lazarus*, No. 1:08cv316 (JCC), 2008 WL 4642213, at *1 n.1 (E.D. Va. Oct. 15, 2008) (holding the pleadings of a New York-licensed attorney acting *pro se* to the same standards applicable to parties represented by counsel); *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1078 (E.D. Va. 1997) (finding that applying *pro se* standards to complaints drafted by attorneys "has the perverse effect of skewing the playing field rather than leveling it").

**B.    Dismissal With Prejudice Was Proper Because Granting Leave to Amend Would Have Been Futile.**

The decision to grant or deny leave to amend rests in the trial court's sound discretion, *Foman v. Davis*, 371 U.S. 178, 182 (1962), and thus is reviewed on appeal for abuse of that discretion, *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996), which will only be found when the district court denies leave without sufficient reason, *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Reasons that justify denying leave to amend include undue delay, bad faith, repeated failure to cure pleading deficiencies, undue prejudice, and, of paramount importance here, futility of amendment. *Id.*

DuBois argues in a conclusory manner that the District Court should have permitted him to amend the Complaint and that his pleading failures could be cured by amendment.  He offers virtually no explanation of the additional facts he would allege if afforded another opportunity and none at all of how such facts, if alleged, would remedy the Complaint's many fatal defects.  Nor did he follow the appropriate procedure for seeking leave to amend the complaint, having failed to file a motion seeking such relief or to provide the District Court with a proposed amended complaint.  *See* D.D.C. L. Civ. R. 15.1 ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended.").  As shown, regardless of whether DuBois could have alleged facts that fell within three years of his filing the Complaint, he was fully cognizant of the

underlying dispute as early as 2004 and no later than January 2006, and his claims against all of the Appellees are, therefore, time-barred. In addition, and irrespective of any possible amendment, the P&A Agreement bars his claims against JPMC. Thus, any amendment would have been futile and, therefore, the District Court properly dismissed the Complaint with prejudice. *See James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Appellees respectfully request that this Court affirm the District Court's Final Judgment dismissing the case with prejudice.

DATED:     March 28, 2012              Respectfully submitted,


                                      /s/ David S. Panzer
                                      David S. Panzer (Bar No. 470677)
                                      David M. DeVito
                                      (Bar No. 998382; admission pending)
                                      Greenberg Traurig, LLP
                                      2101 L Street, NW
                                      Suite 1000
                                      Washington, DC  20037
                                      Tel. (202) 331-3100
                                      Fax. (202) 331-3101
                                      panzerd@gtlaw.com

                                      *Counsel for Appellees JPMorgan Chase
                                      Bank, N.A., Chase Home Finance LLC, and
                                      Tait O. Norton*


                                      /s/ Russell J. Pope
                                      Russell J. Pope (Bar No. 426865)
                                      TREANOR POPE & HUGHES PA
                                      29 W. Susquehanna Ave., Suite 110
                                      Towson, MD 21204
                                      Telephone: (410) 494-7777
                                      Facsimile: (410) 494-1658
                                      rjpope@tph-law.com

                                      *Counsel for Appellee Federal National
                                      Mortgage Association*

34

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume imitation of Fed. R. App. P.

32(a)(7)(B) because:

[**X**]   this brief contains 9860 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[   ]   this brief uses a monospaced typeface and contains [ *state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because:

[**X**]   this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in 14-pt Times New Roman font, *or*

[   ]   this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

 /s/ David S. Panzer
David S. Panzer

*Counsel for Appellees JPMorgan Chase Bank, N.A., Chase Home Finance LLC, and Tait O. Norton*

Dated:  March 28, 2012

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that two copies of the foregoing Joint Brief of Appellees JPMorgan Chase Bank, N.A., Chase Home Finance LLC, Federal National Mortgage Association, and Tait O. Norton was served by first-class U.S. Mail, Postage Prepaid, on the following on March 28, 2012:

Nicholas J. DuBois
57 Pleasant Valley Drive
Vernon, NJ 07462-3430

Nicholas J. DuBois
Mailing:  P.O. Box 1180
McAfee, NJ 07428-1180

*Pro Se Plaintiff*

 /s/ David S. Panzer
David S. Panzer